833 F.2d 1507
 45 Empl. Prac. Dec. P 37,596,
2 Indiv.Empl.Rts.Cas. 1377
Tommy L. EVERETT, Plaintiff-Appellant,
v.
George NAPPER, City of Atlanta, Julius Derico and Carl B.
Lathrop, Defendants- Appellees.
 No. 86-8477.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 15, 1987.
 
 Donald M. Dotson, Atlanta, Ga., for plaintiff-appellant.
 George R. Ference, W. Roy Mays III and Marva Jones Brooks, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.
 FAY, Circuit Judge:
 
 
 1
 Tommy L. Everett ("Everett") appeals from a decision of the district court awarding summary judgment to the City of Atlanta and several of its officials, 632 F.Supp. 1481. Everett filed this civil rights action pursuant to 42 U.S.C. Sec. 1983 (1982) alleging that defendants dismissed him from his position as a firefighter with the City of Atlanta Bureau of Fire Services in violation of his rights under the fourth and fourteenth amendments. Everett also brought a pendent state law invasion of privacy claim. We find that Everett only produced evidence to establish a prima facie case for his claim of procedural due process. Therefore, we affirm in part, reverse in part, and remand.
 
 I. FACTS
 
 2
 Everett was a firefighter for the City of Atlanta Bureau of Fire Services. The Department of Public Safety, Office of Professional Standards, received information from the Narcotics Division of the Dekalb County Police Department about an investigation of one of the firefighters, James Hodges. As part of the drug investigation, the Narcotics Division conducted surveillance on the home of James Hodges, including video tapes, and determined that drug sales were taking place there. The Narcotics Division observed several employees of the Bureau of Fire Services entering and departing from the Hodges residence. Everett was not one of those employees. Based on that information, the Office of Professional Standards initiated an internal administrative investigation to ascertain whether other firefighters were involved in drugs.
 
 
 3
 Hodges was subsequently interviewed by Sergeant C. Lathrop ("Lathrop") of the Office of Professional Standards. At this interview, Hodges identified a lengthy list of names of fire bureau personnel who had purchased drugs from him within the prior three months. Everett was among those names listed.[1]
 
 
 4
 On August 4, 1984, Lathrop called Everett into the Office of Professional Standards for an interview. Lathrop informed Everett that the department was conducting an administrative, not criminal, investigation into drug use and sales within the Department of Public Safety. Lathrop also informed Everett of the memorandum dated August 3, 1984, issued by Commissioner Napper requiring all employees to cooperate in drug testing to determine drug use by firefighter employees. The memorandum stated:
 
 
 5
 The Office of Professional Standards is presently investigating what is alleged to be widespread use and trafficking of illegal drugs within the Bureau.
 
 
 6
 Through this memorandum, I am directing all personnel to fully cooperate in this investigation. Cooperation includes, but is not limited to, appearing as directed, giving statements as required, submitting to polygraph examinations if requested and submitting to any drug screening tests deemed appropriate by the Office of Professional Standards.
 
 
 7
 Failure to comply with any part of this directive will be considered as disobeying a direct order from the Commissioner of Public Safety. Any employee disobeying this order will be immediately suspended and the appropriate charges will be preferred.
 
 
 8
 Lathrop showed the memorandum to Everett but Everett contends that he was not given the opportunity to read it. As a result of Hodges' statement, Lathrop suspected that Everett was involved in drug use in violation of departmental rules. Lathrop, therefore, ordered Everett to submit to a urinalysis test. Everett refused to submit to the urinalysis test informing Lathrop that he knew Hodges only on a professional level and had never been to his residence. Everett signed a written statement indicating that his refusal to cooperate was based on his "non-involvement pertaining to this particular investigation."
 
 
 9
 Everett's refusal to cooperate in the investigation, and his failure to comply with Lathrop's direct order resulted in his immediate suspension. When asked to surrender his identification he responded that he could not because it had been misplaced. Thereafter, formal charges were brought against Everett for violating the work rules of the Department of Public Safety. Everett, due to his refusal to obey Lathrop's order to take the urinalysis test, was charged with violating Rule 2.09 which requires that "[e]mployees of the Department shall promptly obey all proper and lawful orders of supervisors and other employees assigned to act in a supervisory capacity." Everett was also charged with violating Rule 1.03 which provides that "[e]mployees of the department shall be truthful, at all times, both in their spoken and written words ..." because he stated that he told Captain Rosemond that he lost his identification, when Captain Rosemond had no recollection of such a statement. The final charge against Everett was for violation of Rule 2.33 which states that, "[e]very employee of the department shall familiarize herself/himself with and conform to rules, regulations, directives and standard operating procedures of the department," due to his refusal to cooperate in the investigation as required by Department of Public Safety General Order No. 83-4.[2]
 
 
 10
 Everett was suspended without pay, effective August 6, 1984, pending an administrative investigation. The department notified Everett that a hearing on the work rule violation charges would be held before the disciplinary hearing panel on September 12, 1984. The hearing took place, after having been continued, on October 3, 1984. Everett appeared before the panel with counsel and participated in the hearing by presenting evidence and questioning witnesses.
 
 
 11
 At the completion of the hearing the panel concluded that Everett had violated the three work rules as charged. Commissioner Napper accepted the panel's recommendation and ordered that Everett be terminated, effective November 1, 1984.
 
 
 12
 Everett appealed the discharge order to the City of Atlanta Civil Service Board, and received a full hearing on December 13, 1984. Everett appeared with counsel and contested the rule violation charges and the penalty imposed. The Civil Service Board concluded that Everett had violated the work rules as charged and affirmed the decision of dismissal.
 
 
 13
 Thereafter, Everett filed a civil rights action in federal district court seeking equitable relief and damages. Everett alleged that the discharge order violated his fourth and fourteenth amendment due process and equal protection rights. He also alleged a pendent state claim of invasion of privacy. The district court granted defendants motion for summary judgment on all constitutional claims and declined to assert jurisdiction over the remaining state tort claim.[3]
 
 II. DISCUSSION
 
 14
 Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party is entitled to "judgment as a matter of law" when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is the same as the standard for granting a directed verdict. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). We must, therefore, affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury. Anderson, 106 S.Ct. at 2512; Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir.1987). The evidence of the non-movant is to be believed, however, and all justifiable inferences are to be drawn in his favor. Anderson, 106 S.Ct. at 2513; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Barnes, 814 F.2d at 609; Borg-Warner Acceptance Corp. v. Davis, 804 F.2d 1580, 1582 (11th Cir.1986). With these principles in mind, we turn to the substantive law governing this case to determine whether the district court's order granting defendant's motion for summary judgment was proper.
 
 
 15
 To prevail in a civil rights action pursuant to 42 U.S.C. Sec. 1983, Everett must establish that defendants both deprived him of a right secured by the United States Constitution or federal laws and that the action taken by the defendants was under color of state law.[4] Adickes, 398 U.S. at 150, 90 S.Ct. at 1604; Motes v. Myers, 810 F.2d 1055, 1058 (11th Cir.1987); Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir.1986). In order to overcome the motion for summary judgment filed by the city of Atlanta and the named officials, Everett had to carry the burden of showing that those named officials deprived him of his constitutional rights in issuing the discharge order. The district court determined that Everett failed to establish a prima facie case under 42 U.S.C. Sec. 1983. We hold that Everett did meet this burden but only with respect to his procedural due process claim.
 
 A. Fourth Amendment
 
 16
 Everett argued that the requirement that he undergo a urinalysis violated his fourth amendment right to be free from unreasonable search and seizure. Everett further argued that a urinalysis is a search which was imposed on him without a warrant or any objective evidence linking him to drug usage. Everett also contends that absent a showing of probable cause or warrant he should not have been required to submit to the test as a matter of law.
 
 
 17
 We agree with the district court that Everett has not incurred a violation of his fourth amendment rights. An analysis of a fourth amendment claim begins with a determination of whether the action taken consisted of a search within the meaning of the fourth amendment. See O'Connor v. Ortega, --- U.S. ----, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). If a search has taken place, the next step in the analysis is to determine whether first, the search was justified in its inception, and second, whether the search as actually conducted was reasonably related in scope to the circumstances which justified the search in the first place. O'Connor, 107 S.Ct. at 1503; New Jersey v. T.L.O., 469 U.S. at 341, 105 S.Ct. at 743.
 
 
 18
 Several courts have acknowledged that a urinalysis is a search within the meaning of the fourth amendment. McDonnell v. Hunter, 809 F.2d 1302, 1307 (8th Cir.1987); Capua v. City of Plainfield, 643 F.Supp. 1507, 1513 (D.N.J.1986); Allen v. City of Marietta, 601 F.Supp. 482, 489 (N.D.Ga.1985). Since the fourth amendment was designed to protect personal privacy and dignity, we agree that a urinalysis is a search. This is consistent with rulings like that of the Supreme Court that the taking of a blood sample is a search. Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966). Because Everett's continued employment was contingent upon his subjection to a search, we must determine whether the search offended the Fourth Amendment. See e.g., Keyishian v. Board of Regents, 385 U.S. 589, 605-06, 87 S.Ct. 675, 684-85, 17 L.Ed.2d 629 (1967). Everett concedes, in his brief, that a public employer may require a fireman to submit to urinalysis based on reasonable suspicion.[5]
 
 
 19
 There is no question that the City of Atlanta officials had reason to suspect that Everett may be involved with the use of illegal drugs. Hodges, a fellow firefighter and confirmed drug dealer, named Everett as one of the drug buyers. Other individuals either named by Hodges or recorded on tape from the surveillance of Hodges' house, were asked to submit to the urinalysis. Hodges was a reasonable source of information and the city officials, equipped with the memorandum issued by Commissioner Napper requiring employee cooperation in the internal investigation, justifiably asked Everett to submit to the test. The City has a compelling interest in having its firefighters free from drugs. Firefighters must be prepared to react and make decisions quickly in order to insure public safety. Under the circumstances articulated in this case, the standard used by the officials conducting the internal administrative investigation to determine who should be tested was reasonable.[6] Everett's lack of cooperation, therefore, was a violation of a direct order which led to his immediate suspension.
 
 B. Procedural Due Process
 
 20
 Everett contends that the district court erred in determining that he received procedural due process. It is undisputed that the incident which ultimately resulted in Everett's discharge took place on August 4, 1984. Everett received notice on September 9, 1984 that a hearing to review the charges against him would be held on September 12, 1984. The formal hearing before the Bureau of Fire Services panel actually took place on October 3, 1984. Everett attended the hearing with his attorney, presented evidence and cross-examined witnesses that testified against him. Everett appealed the disciplinary panel decision and received another full hearing before the City of Atlanta Civil Service Board on December 13, 1984. Evidence was again presented to support the written charges and Everett, represented by counsel, presented evidence and cross-examined witnesses. The district court granted the City's motion for summary judgment on this count.
 
 
 21
 Due process requires that Everett receive notice and opportunity to be heard before being deprived of a property interest. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); Kelly v. Smith, 764 F.2d 1412, 1414 (11th Cir.1985). Everett received adequate notice and a full and fair hearing prior to his termination on November 1, 1984. The Court in Loudermill stated that, though a pretermination hearing is necessary prior to discharge, the proceeding need not definitively resolve the propriety of the discharge, rather it serves as a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495. Everett was provided with a pretermination hearing that satisfies the due process criteria set forth in Loudermill. He has presented no evidence to the contrary.
 
 
 22
 Furthermore, Everett was provided an opportunity for a full appeal before the City of Atlanta Civil Service Board, where he again challenged the propriety of the discharge. Under the circumstances, Everett had a full opportunity to respond to the charges brought against him. We agree with the district court that with respect to the pretermination hearing, summary judgment in favor of the City of Atlanta and its officials was proper.
 
 
 23
 Everett also argues that his suspension without pay from August 4, 1984, to October 3, 1984, the date of the first full hearing, violated his due process rights. We acknowledge that "where the employer perceives a significant hazard in keeping the employee on the job," the employer may suspend the employee with pay even before granting an opportunity to be heard or notice. Loudermill, 470 U.S. at 544-45, 105 S.Ct. at 1495. Since Everett's pay was stopped, however, a hearing was required. The only arguable hearing prior to the suspension without pay was the confrontation between Everett and Lathrop. Drawing all inferences in favor of Everett, we cannot say that the confrontation provided adequate notice and hearing. We, therefore, must reverse the grant of summary judgment with respect to the suspension without pay issue.
 
 C. Substantive Due Process
 
 24
 Everett contends that the district court erred when it concluded that he did not suffer a deprivation of his substantive due process rights. In Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the Supreme Court explained that substantive due process is violated when governmental actions "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." Rochin, 342 U.S. at 169, 72 S.Ct. at 208. Substantive due process claims allege that the governmental conduct would be unjustified even if the most stringent procedural safeguards were followed. Gilmere v. City of Atlanta, 774 F.2d 1495, 1500 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1970, 90 L.Ed.2d 673 (1986). In determining whether the governmental conduct rises to the level of a constitutional violation, the court must look to whether the requirement imposed is rationally related to the legitimate interests of the employer. See Kelley v. Johnson, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 487-88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); DiMassimo v. City of Clearwater, 805 F.2d 1536, 1541 (11th Cir.1986); Division 241 Amalgamated Transit Union v. Suscy, 538 F.2d 1264, 1266 (7th Cir.), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976).
 
 
 25
 Here, the Bureau of Fire Services has a strong and legitimate interest in protecting the public safety and welfare by insuring that its employees are fit to perform their duties. Drug use among firefighters could affect fitness and performance thereby threatening the safety and welfare of the community. Without deciding whether some regular or random testing could be imposed upon such municipal employees engaged in this type of activity, once Hodges, a confirmed drug dealer, implicated others in the department, a rational basis emerged for an internal administrative investigation justifying urinalysis testing for those reasonably suspected of drug use. Hodges named Everett--it was, therefore, neither arbitrary nor capricious for the city officials to impose the urinalysis requirement on Everett.[7]
 
 D. Equal Protection
 
 26
 Everett contends that his equal protection rights were violated since he was ordered to take the urinalysis test, while other employees who also knew Hodges were not ordered to take the test. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." Williamson, 348 U.S. at 489, 75 S.Ct. at 465. Everett argues that firefighter J.D. Phillips, whose automobile was believed to have been seen in front of Hodges' home, received preferential treatment because he was not required to undergo urinalysis. However, Lathrop testified that although the license tag on the van which appeared in front of Hodges' home in the surveillance videotapes was traced to a "J.D. Phillips," the owner of the van was a person other than firefighter Phillips. There was no evidence, therefore, linking firefighter Phillips to drugs, and no basis upon which to order him to undergo a urinalysis test. On the other hand, Hodges' statement connected Everett and several other employees to drug use. All of these employees, whom the investigators had reason to believe had in fact purchased or used drugs, were required to take drug screening tests. The City's actions were fair and substantially related to the goal of insuring firefighter fitness. DiMassimo, 805 F.2d at 1541. Furthermore, Everett simply failed to establish that individuals who were similarly situated were treated differently. Summary judgment on his equal protection claim was therefore proper.
 
 III. CONCLUSION
 
 27
 Summary judgment is AFFIRMED for all claims except procedural due process. That claim is REVERSED and REMANDED.
 
 
 
 [1]
 Sometime after Everett refused to obey a direct order from Lathrop, Hodges modified his statement as to the time of the alleged drug deal between Hodges and Everett. The modification has no relevance, however, to Lathrop's decision to make such an order
 
 
 [2]
 Department of Public Safety General Order 83-4, Section IV, Paragraph A, requires that employees fully cooperate with the internal investigations personnel or any employee authorized by the Commissioner to conduct an investigation
 
 
 [3]
 In light of our decision to remand the procedural due process claim, the district court should reconsider its jurisdiction over the state tort claim
 
 
 [4]
 It is undisputed that defendants' George Napper, Julius Derico and Carl Lathrop were acting under color of state law during this internal investigation. Napper was acting in his capacity as Commissioner of the Department of Public Safety; Derico was acting in his capacity as Chief Inspector of the Office of Professional Standards; and Lathrop was acting in his capacity as Investigator of the Office of Professional Standards
 
 
 [5]
 Future development by case law will undoubtedly clarify what, if any, basis is needed to order a search depending upon such factors as: the nature of the work involved; the danger to others, including the public; any governmental interest, legitimate business concerns by employers and the totality of the surrounding circumstances including the intrusiveness and reliability of the tests or examinations under consideration
 
 
 [6]
 Everett contends that the modification of Hodges' statement regarding the dates of the drug purchase rendered the official request to undergo urinalysis unreasonable. This contention is irrelevant, however, because Hodges' revised statement occurred after Everett violated the Department of Public Safety Rule 2.09 by disobeying a superior's order
 
 
 [7]
 Everett argues that the Department of Public Safety had no standard operating procedures or policy regarding urinalysis thereby rendering his discharge arbitrary and capricious. The Department of Public Safety work rules, 2.14, 1.33, 2.39, the general order No. 83-5, which established the policy regarding employee intoxication and substance abuse, and the Atlanta Code of Ordinances, Section 11-1002 gave the Commissioner broad administrative powers. The Commissioner's August 3, 1984 directive was a valid exercise of his discretionary authority to take the necessary steps to implement the Department's rules and regulations. We agree with the district court that Everett has not met his burden of showing that the actions taken by the City officials by asking him to submit to the urinalysis were so irrational as to be arbitrary and capricious. See Kelley v. Johnson, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976)