**William BYRD, Plaintiff,**

v.

**CITY OF ATLANTA, et al., Defendants.**

**No. 1:87–CV–2307–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

March 2, 1988.

Ralph S. Goldberg, Atlanta, for plaintiff.

Marva Jones Brooks, Overtis L. Hicks, W. Roy Mays, Office of Atlanta City Atty., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This section 1983 action arises from plaintiff's alleged suspension without pay

and subsequent termination from his position as a detective in the Atlanta Bureau of Police Services. Plaintiff contends that defendants' actions have violated his rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, violated his rights under the Georgia Constitution and violated a local ordinance. The case is currently before this court on defendants' motion to dismiss.

FACTS

Plaintiff brings this lawsuit against the City of Atlanta and city officials who allegedly served in a supervisory capacity over plaintiff. In the posture of a motion to dismiss the court deems the following factual allegations in the complaint as true: Defendant Napper is Commissioner of the Department of Public Safety. Defendant Redding is Chief of Police for the City of Atlanta. Defendant Julius Derico was Chief Inspector of the Office of Professional Standards. Plaintiff alleges that the relevant actions complained of were performed by defendants "under the color" of state law. Plaintiff alleges that all relevant actions taken by defendants Napper and Redding and by the Civil Service Board of the City of Atlanta represented the official policy and practice of defendant City of Atlanta in that defendants Napper and Redding were the policymakers for the city.

Plaintiff alleges that on March 3, 1985, he was suspended from his employment without pay and without a suspension hearing. Plaintiff alleges that he was thereafter charged with violating Employee Work Rules 2.65, 2.33 and 1.01.[1]

Plaintiff alleges that on July 18, 1985 he received a pretermination hearing and on July 30, 1985 was discharged for violating the above-enumerated rules. Plaintiff alleges that after a hearing before the Civil Service Board, the Board affirmed plaintiff's discharge on or about October 1, 1985.

Plaintiff alleges that, beyond a "boilerplate" statement, defendants failed to provide him a statement of the reasons for his discharge and any evidence supporting such action.

Plaintiff alleges that he had a federally recognizable state property interest in his continued employment guaranteed by state law and local ordinance which provided that he could not be terminated or suspended without cause.

Plaintiff further alleges that he was discharged contrary to City Ordinance 5–34.1, section 7(b), which provides in pertinent part:

> ... as to offenses for which progressive discipline is applicable, an employee shall not be dismissed until progressive steps of discipline have been taken, without positive results therefrom, and until the employee to be discharged has been presented in writing with specifically stated reasons for such discharge.

A case involving the same parties and arising from the same employment action was filed in this court July 6, 1986. *Byrd v. City of Atlanta*, C.A. No. 86–1467A. In that case, Judge Vining of this court dismissed plaintiff's complaint with prejudice for failure to state a claim based on the conclusory nature of the complaint. November 20, 1986 Order. The Eleventh Circuit affirmed the dismissal but remanded the case to the district court for dismissal *without prejudice*. 826 F.2d 13. The instant action is the refiling of that earlier

---

**1.** These rules of the Department of Public Safety are as follows:

Work Rule 2.65
Employees shall not be negligent in the control of contraband.

Work Rule 2.33
Every employee of the department shall familiarize herself/himself with and conform to rules, regulations, directives, and standard operating procedures of the department.

Work Rule 1.01

The demands for Department of Public Safety services are many, varied and often extreme. Employees shall meet these challenges by responding in an appropriate manner to whatever situation they encounter by:
C. Requesting the assistance of supervisors when the appropriate action required is either not clear or possible under the circumstances or not within the scope of authority of the employee of whom action was requested.

dismissal with a more thoroughly drafted complaint.

## DISCUSSION

Plaintiff contends that defendants violated his federal Fourteenth Amendment rights of Due Process and Equal Protection as well as Due Process protected by the Constitution of the State of Georgia. Specifically, plaintiff contends that defendants violated his rights of procedural due process by suspending him without pay without first granting him a presuspension hearing. Plaintiff also contends that he was denied procedural due process because defendants failed to give him proper notice of the reasons for his discharge and because he contends that the relevant work rules are vague and overbroad. Plaintiff further contends that defendants denied him substantive due process throughout the termination proceedings because defendants failed to base plaintiff's discharge on "substantial evidence." Plaintiff contends that the sanction of discharge was excessive given that the Board found that plaintiff's "worst offense was a mistake in judgment and that the penalty received was too harsh" and likewise that defendants failed to follow their own ordinance-mandated tenets of "progressive discipline" by not first resorting to a lesser sanction than discharge.

Additionally, plaintiff contends that defendant violated his right to Equal Protection under the laws because defendants, in taking the complained of employment action, failed to treat him the same as other similarly situated police officers.

Defendants in their motion to dismiss challenge plaintiff's complaint on essentially six grounds: (1) the complaint fails to state a claim against the City of Atlanta; (2) the facts of this action are not properly the subject of a § 1983 action; (3) the *res*

*judicata* effect of the decision of the Civil Service Board and subsequent dismissal of certiorari of the state court review of that decision bars the instant action; (4) the action is time-barred under Ga.Off'l Code Ann. § 9–3–33; (5) the individually named defendants are entitled to qualified immunity; (6) plaintiff's claims regarding administrative action taken by defendants leading to his discharge are not cognizable by this court because they allege only negligent acts by defendants and because defendants contend that *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) indicates the inappropriateness of this type of claim in federal court.

### 1. Claims against the City of Atlanta

■ Defendants contend that this action arises only from the particular employment actions taken against plaintiff. No other similar actions are alleged. Defendants argue that in stating a claim under § 1983 against a municipality, a plaintiff must allege that the constitutional deprivation was caused by official municipal policy, custom, or usage. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants argue that plaintiff has alleged only one action by the city, and therefore cannot state a claim for municipal liability because he has insufficiently alleged a "custom or usage." *Id.*

Defendants fail to recognize that there are two branches of the *Monell* analysis known colloquially as the "policymaker" branch and the "custom or usage" branch.[2] The Supreme Court recently refined the "policymaker" branch of § 1983 supervisory liability doctrine in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The court there stated:

> Municipal liability attaches only where the decisionmaker possesses final author-

**2.** Section 1983 does refer to deprivations under color of state "custom or usage," and the court in *Monell* noted accordingly that "local governments, like every other § 1983 'person', ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." 436 U.S. at 690–91, 98 S.Ct. at 2036.

A § 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state "custom or usage." *Id.* Because there is no allegation that the actions challenged here were pursuant to a local "custom", this aspect of *Monell* is not at issue here.

ity to establish municipal policy with respect to the action ordered.... However, like other governmental entities, municipalities often spread policymaking authority among various officers and official bodies. As a result, particular officers may have authority to establish binding county policy respecting particular matters.... To hold a municipality liable for actions ordered by such officers exercising their policymaking authority is no more an application of the theory of *respondeat superior* than was holding the municipalities liable for the decisions of the City councils in *Owen* [v. *City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)] and *Newport* [v. *Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)] (citations omitted). In each case municipal liability attached to a single decision to take unlawful action made by municipal policymakers. We hold that municipal liability under § 1983 attaches where and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* 106 S.Ct. at 1299–1300. *See also City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Plaintiff here has adequately alleged that actions by defendants Napper and Redding and by the Civil Service Board of the City of Atlanta represented the official policy of the City of Atlanta at the various phases of the allegedly unlawful employment decisions. Plaintiff's allegations therefore form the basis for municipal liability on the part of the City of Atlanta to the extent of actions committed by defendants Napper and Redding and by the Civil Service Board respectively. Plaintiff however has failed to allege a policymaking role for Chief Inspector Derico on a particular decision, rule, or policy through which the city might be held liable. The City may only be held liable for the alleged actions of Napper, Redding and the Board.

## 2. Liability under *Parratt*

Defendants contend that the facts of this action are an improper subject of a § 1983 action under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt,* the Court attempted to delimit the boundaries of causes of action under § 1983 for deprivations of property without procedural due process of law. The question before the Court there was whether § 1983 contemplated a claim for the value of certain hobby materials lost by an inmate where state tort remedies were available. The Court held that these remedies satisfied the requirements of procedural due process. *Id.* at 537, 101 S.Ct. at 1914. The court in its discussion indicated, however, that in circumstances which require a *pre*-deprivation hearing, state remedies which do not provide for such an opportunity to be heard are insufficient. *Id.* at 537–38, 101 S.Ct. at 1914 (citing *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)).

The Supreme Court has recently held in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) that the Due Process clause forbids suspension without pay of an employee who has a constitutionally protected property interest in his employment prior to notice and a hearing, *cited in Everett v. Napper,* 833 F.2d 1507, at 1512 (11th Cir. 1987). To the extent then that plaintiff's pleading complains of suspension without pay in the absence of a pre-suspension hearing, *Parratt* is inapplicable and plaintiff clearly states a claim. Additionally, plaintiff in paragraphs 16 and 19 of his complaint allege that improper notice was given him prior to any hearing. Due process also requires that plaintiff receive proper notice of the behavior for which he is suspended or discharged. *Everett v. Napper supra* at 1512. Plaintiff has properly alleged that he did not receive such notice.

Likewise, *Parratt* did not negate a party's opportunity to challenge the constitutional sufficiency of a particular post deprivation hearing or to challenge the substantive unfairness of a particular employment action. In short, *Parratt* has not been extended to bar the other types of claims raised by plaintiff here. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (where predeprivation or post-deprivation state remedies are inadequate, § 1983 remedy still available); *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Duncan v. Poythress*, 657 F.2d 691 (5th Cir.1981); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir.1985) (*Parratt* does not bar availability of § 1983 for substantive due process claims or Bill of Rights claims).

When a court makes a *Parratt* inquiry it is essentially asking the question whether plaintiff has suffered a deprivation of property without due process of law. The *Parratt* inquiry merely asks in the area of *procedural* due process whether plaintiff has stated a claim that rises to the level of a constitutional deprivation. If constitutionally adequate state remedies are available, there is no deprivation. *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914.

In the area of substantive due process, *Parratt* is inapplicable. *See e.g., Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985). However, defendants have challenged plaintiff's substantive due process claims contending that the allegations of the complaint do not rise to the level of a constitutional deprivation under the relevant standards reiterated in *Gilmere. Supra* at 1500. In *Gilmere*, the Eleventh Circuit stated, "[s]ubstantive due process is violated by state conduct that 'shocks the conscience' or constitutes force that is 'bru-

tal' and as such 'offend[s]' even hardened sensibilities." *Id.* at 1500, (quoting *Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952). Substantive due process claims allege that the governmental conduct would be unjustified even if the most stringent procedural safeguards were followed. *Id. cited in Everett v. Napper*, 833 F.2d 1507, at 1513 (11th Cir.1987).

■ Plaintiff alleges that his discharge was not based on substantial evidence and that the defendants violated his substantive rights because no lesser sanctions were applied consistent with the city ordinance requiring progressive steps of discipline. In determining whether the government conduct rises to the level of a constitutional violation, the court must decide whether the discharge determination was supported by substantial evidence. *Holley v. Seminole County School District*, 755 F.2d 1492, 1499 (11th Cir., 1985); *see also Viverette v. Lurleen B. Wallace State Junior College*, 587 F.2d 191, 194 (5th Cir.1979); *Ferguson v. Thomas*, 430 F.2d 852, 858 (5th Cir.1970).[3] The court's duty in this regard is to conduct a limited substantive review to determine whether a rational basis exists for the deprivation of the individual's property interest in his job. *Holley supra*, 755 F.2d at 1499; *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970). *Holley* clearly indicates that the allegations in the complaint suffice to state a claim. This court must undertake a review of the record at summary judgment posture and may decide the issue as a question of law. *Holley supra* at 1499 n. 5.

As plaintiff has properly pleaded his procedural and substantive Due Process claims as well as his Equal Protection claims, defendants' *Parratt* argument fails.[4]

---

**3.** Assuredly there is no reason not to apply these school discharge cases in the context of the review of the discharge of another public employee. A law enforcement officer deserves no less constitutional protection.

**4.** The Court also notes that if, as the parties assert in their briefs, the Fulton County Superi-

or Court dismissed plaintiff's petition for certiorari on technical grounds without reaching the merits of plaintiff's contention of procedural violations under the constitution, such action rendered any state remedies for redress of these alleged violations unavailable.

### 3. *Res Judicata*[5] Effect

■ Defendants seemingly raise two arguments based on the prior state litigation in this action. Defendants assert that the action of the Civil Service Board in denying plaintiff relief and a dismissal of plaintiff's petition of certiorari by the Superior Court of Fulton County (a) acts as a *res judicata* bar to this action, and (b) provides additional evidence under *Parratt* that the state provided constitutionally adequate due process negating plaintiff's contention that he was denied procedural due process. Having already ruled that defendants' *Parratt* argument is meritless, the court turns to defendants' *res judicata* argument.

At the outset, the court notes that whatever the possible merit of defendants' *res judicata* argument stemming from the Fulton County action, defendants have neither cited the style and number of that case, nor attached evidence of the particular judgment mentioned in their brief. Without such evidence, the court can make no determination as to any *res judicata* effect. Defendants have failed to carry their burden in this regard.[6]

As regards the preclusive effect of the Civil Service Board's ruling, because this court has no proper evidence of any state court review of that ruling before it, this court must treat that ruling as an unreviewed state administrative decision. Likewise, defendants have produced no evidence of the content of the proceedings before the Board. Insofar as defendants raise this decision for its "claim preclusive" effects, the Eleventh Circuit has recently held that "... in the context of section 1983 suits, the federal common law of preclusion does not require application of state claim preclusion rules to unreviewed state administrative decisions." *Gjellum v. City of Birmingham*, 829 F.2d 1056, at 1064–65 (11th Cir.1987). Thus defendants' *res judicata* argument based on the principles of claim preclusion must fail.

To the extent defendants *res judicata* arguments are to be read as raising the preclusive effect of the Board's ruling on the grounds of issue preclusion (collateral estoppel), they must also fail. In Georgia, the prerequisites to application of the doctrine of issue preclusion are: (1) the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in the earlier action. *Georgia State Conference v. State of Ga.*, 570 F.Supp. 314 (S.D.Ga.1983). As noted above, defendants have produced no evidence as to the content of the Board proceedings. This court is therefore unable to make a determination as to the applicability of the issue preclusive effect of the Board ruling in this case.

Additionally, this court notes that the Supreme Court in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) mandated that, in order to recognize the issue preclusive effect of a state administrative decision, courts must

5. Defendants do not distinguish what they mean by *res judicata*. As the Supreme Court has noted, *res judicata* is often analyzed to consist of two separate preclusion concepts: "issue preclusion" and "claim preclusion". Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided on the merits. This effect is otherwise known as collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated because of a determination that it should have been advanced in an earlier suit. Thus, claim preclusion encompasses the law of merger and bar. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) cited in *Gjellum v. City of Birmingham*, 829 F.2d 1056 (11th Cir.1987). Defendants have not specified which of these preclusive effects they contend is applicable here.

6. The court notes that if, as the parties represent, the Fulton County Superior Court action was merely a dismissal of certiorari with prejudice, but not involving a determination on the particular merits of this case, this court doubts whether such a judgment could properly be accorded a *res judicata* effect here. *See* 28 U.S.C. § 1738; Ga.Off'l Code Ann. § 9–12–40; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Sharpley v. Davis*, 786 F.2d 1109, 1111 (11th Cir.1986); *Casines v. Murchek*, 766 F.2d 1494, 1499 fn. 9 (11th Cir.1985).

determine that (a) the state agency must have been acting in a judicial capacity, (b) it resolved issues of fact properly before it, (c) which the parties had an adequate opportunity to litigate. *Id.* at 3227 (citing *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (setting forth the standards for determining when state administrative fact finding is entitled to preclusive effect.)) Defendants have failed to demonstrate that the Board ruling satisfies *any* of these requirements.

### 4. Statute of Limitations

■ Defendants contend that this action is barred by the applicable statute of limitations. Defendants correctly point out that in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) the Supreme Court in seeking to establish uniformity of application interpreted § 1988, which directs courts in § 1983 actions to apply the most appropriate and analogous state limitations statute, as requiring courts to apply the state statute of limitations for "personal injury" claims. In Georgia, the two-year limitation set forth in Ga.Off'l Code Ann. § 9-3-33 applies to this action. This, however, is merely the beginning of the inquiry.

The court in *Garcia supra* indicated that in § 1983 actions "the length of the limitations period, and the closely related questions of tolling and application, are to be governed by state law." *Id.* 471 U.S. at 269, 105 S.Ct. at 1943, *cited in Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). When a § 1983 action "accrues" is a question of federal law. *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir.1980), *modified on other grounds*, 644 F.2d 1023 (5th Cir. Unit B 1981) *cited in Mullinax v. McElhenney*, 817 F.2d at 716.

The Georgia legislature has enacted a "savings statute" which allows plaintiffs that were dismissed without prejudice six months in which to refile their action in state court. The Georgia Code provides in part:

> When any case has been commenced in either state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state ... either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later.

Ga.Off'l Code Ann. § 9-2-61.

Although the section was at one time ruled as inapplicable to actions which originated in federal court (*see Blaustein v. Harrison*, 160 Ga.App. 256, 286 S.E.2d 758 (1981)), the section was amended in 1985 to specifically allow a refiling following the dismissal of an action originally commenced in federal court. Moreover, while on its face the statute allows refiling only where the plaintiff dismisses the original action, the Georgia courts have repeatedly held that the section "applies to involuntary as well as voluntary dismissals where the merits are not adjudicated." *Fowler v. Aetna Casualty & Surety Co.*, 159 Ga. App. 190, 192, 283 S.E.2d 69 (1981) (quoting *Bowman v. Ware*, 133 Ga.App. 799, 800, 213 S.E.2d 58 (1975)). *See also Douglas v. Kelley*, 116 Ga.App. 670, 158 S.E.2d 441 (1967) ("A dismissal of the case by the court on a ground not adjudicating the merits counts as a voluntary dismissal for this purpose.") The Georgia savings statute also permits the renewal of the action in this court. *Lamb v. United States*, 526 F.Supp. 1117, 1126 (M.D.Ga.1981).

As defendants admit, the instant action accrued on October 1, 1985 when the Civil Service Board affirmed plaintiff's discharge. Plaintiff filed the prior action in this court on July 2, 1986. *Byrd v. City of Atlanta*, C.A. No. 86-1467A. On November 20, 1986, the district court dismissed plaintiff's complaint with prejudice. On July 30, 1987, the Eleventh Circuit issued an opinion affirming the dismissal but remanding the case to the district court for entry of an order dismissing the complaint without prejudice. On September 10, 1987 the district court entered an order making the mandate of the Eleventh Circuit the order of the district court. Plaintiff filed the instant action on October 10, 1987. By function of the Georgia savings statute,

plaintiff had six months to renew his action from the district court's September 10, 1987. The filing of this action was well within this time period; and therefore, plaintiff's claims are not time-barred.

## 5. Qualified Immunity

Defendants argue that to the extent they are sued in their individual capacity, they are entitled to qualified immunity.[7] Defendants contend they are entitled to this defense because they allege they performed their duties in "good faith". Once again, such an assertion only begins the inquiry a court must undertake to determine the propriety of granting defendants' motion to dismiss on the basis of qualified immunity.

The Supreme Court has created the qualified immunity doctrine to protect government officials who are sued in their individual capacity from harassing lawsuits. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The qualified immunity doctrine, as enunciated in *Harlow,* was designed to "avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed. 2d 411 (1985) (quoting *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2737).

The court has concluded that qualified immunity as a defense is actually an entitlement not to stand trial under certain circumstances. *Id.* 472 U.S. at 525, 105 S.Ct. at 2815. Where the allegations of the complaint or the undisputed facts after discovery fail to show that an official violated

"clearly established" laws, the official is entitled either to have the complaint dismissed or his motion for summary judgment granted. The Supreme Court recently clarified its position in this regard stating that

> The right the official is alleged to have violated must have been 'clearly established' in a . . . particularized, and hence . . . relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, in *Anderson* the Court defined the "relevant question" as "the objective (albeit fact-specific) question of whether a reasonable" state official could have believed the actions taken were lawful, in light of clearly established law and the information the official possessed. *Id.* at 3040.

Read out of context, the language of *Harlow, Mitchell* and *Anderson* might lead one to a similar conclusion as defendants here. Even though the court, consistent with its goal that government officials not be needlessly be burdened by the litigation process, has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of litigation," *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, it has not suggested that the procedural rules applicable to a motion to dismiss should be abrogated. In fact, at the conclusion of its *Anderson* opinion, the court acknowledged that where the allegations of a complaint set forth actions a reasonable officer could not have believed were lawful, then dismissal is improper and discovery is proper. *Anderson,* 107 S.Ct. at 3042 n. 6.

■ The court feels that under the guidelines set forth in the above-cited cases, the complaint satisfactorily sets forth violations of clearly established law

---

7. Defendants also take the position that this action should be viewed as solely against them in their official capacities. Defendants cite no

authority for this proposition and the court finds it devoid of merit. *See* Rule 11, Fed.R. Civ.P.

which reasonable state officials could not have believed were lawful.

Paragraph 10 of the complaint alleges that plaintiff was suspended without pay without a presuspension hearing. This requirement has been "clearly established" at least since the Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Paragraph 16 alleges improper pre-termination notice because defendants gave plaintiff no reasons for his discharge beyond a "boilerplate" statement. Such notice is required by *Holley v. Seminole County School District*, 755 F.2d 1492, 1497 (11th Cir.1985); *see also Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Paragraph 19 alleges that the operative work rules at issue in this case are vague and overbroad. The court construes this allegation in concert with plaintiff's other claims sounding in due process that he was denied constitutionally adequate notice of the charges against him and the misbehavior for which he might be sanctioned. *Id.*[8]

Paragraph 20 alleges that because the applicable ordinance requiring "progressive discipline" was not followed in this case, plaintiff's discharge was arbitrary and capricious in violation of plaintiff's due process rights under the United States Constitution, the Georgia Constitution and in violation of the local ordinance. Defendants have not raised the issue of their immunity under the state constitution or the local ordinance. The question then is solely whether qualified immunity is proper for this claim for the alleged violation of federal constitutional rights. This circuit has recognized that disregard for state and local procedures may support a federal con-

stitutional claim. *See Smith v. State of Georgia*, 684 F.2d 729, n. 6 (11th Cir.1982); *Dunn v. Tyler Ind. School Dist.*, 460 F.2d 137, 144 (5th Cir.1972). This court believes that, if proven, the allegations in the complaint support such a claim for violation of "clearly established" law. *See* City Ordinance 5–34.1, section 7(b).

Paragraph 21 alleges that plaintiff's discharge was arbitrary and capriciously excessive given the Board's finding that plaintiff's "worst offense was a mistake in judgment and that the penalty received was too harsh." This claim enhances plaintiff's claim that the Board's decision was not based on substantial evidence produced at the hearing. *See* discussion *infra*.

Paragraph 22 properly alleges a denial of plaintiff's clearly established Equal Protection rights in being treated the same as those similarly situated. *Gosney v. Sonora Independent School District*, 603 F.2d 522 (5th Cir.1979). Paragraph 23 alleges that the discharge was not based on substantial evidence produced at the hearing. This claim alleges a violation of the right clearly established in *Holley v. Seminole County School District*, 755 F.2d 1492, 1499 (11th Cir.1985). *Cf. Lee v. Hutson*, 810 F.2d 1030 (11th Cir.1987) *reh. denied Lee v. Hutson*, 838 F.2d 1221 (11th Cir. 1988).

6. Cognizability of Plaintiff's Claims Under *Bishop v. Wood*[9]

In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the court held that the dismissal of a city policeman implicated neither the "property" or "liberty" interest protected by due process. The court reasoned: "a property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim

---

8. The court feels that it is beyond doubt that some definiteness is required in an ordinance or work rule to put an employee on notice of what constitutes proper or improper behavior and that this is fully consistent with the "clearly established" requisites of notice and a hearing under due process. Accepting plaintiff's allegations as true, as the court must on motion to dismiss even on qualified immunity grounds, *Anderson*, 107 S.Ct. at 3042 n. 6, qualified im-

munity is inappropriate at this stage of the proceedings.

9. Defendants also contend that to the extent plaintiff's claims rest on a theory of "negligent" deprivation of his rights, the complaint must be dismissed. Plaintiff, however, nowhere alleged that defendants were negligent.

of entitlement must be decided by reference to state law." The court held that under North Carolina state law at issue there, the plaintiff "held his position at the will and pleasure of the city." *Id.*

In the instant case, plaintiff properly alleged that he could be terminated only "for cause" and thus held a constitutionally protected "property" interest in his employment. *Bishop* does not apply here.

CONCLUSION

The Court DENIES defendants' motion to dismiss.[10]

---

**10.** The court GRANTS defendants' motion insofar as this order specifies that the allegations in the complaint fail to establish *Monell* liability for the City of Atlanta for the actions of defendant Derico.