Major General James A. Ryan, Adjutant General Military Department of Arkansas Office of the Adjutant General Camp Robinson North Little Rock, Arkansas 72118-2200
Dear Major General Ryan:
This is in response to your request for an opinion concerning the legality of promulgating a policy to allow either random or "reasonable cause" drug testing of certain state employees. Specifically, you inquire as to whether it is legally possible to use random drug testing for state employees who are in critical positions such as security guards who have constant contact with the public and who are licensed to carry weapons, or firemen who are on call to answer emergencies and are trained to respond to chemical spills, and who are also trained medical technicians. You also inquire as to whether it would be legally possible to administer drug testing to such employees on the grounds of "reason to suspect" drug usage.
We assume that your questions refer to civilian state employees of the Military Department of Arkansas. For the reasons that follow, it is my opinion that the question of whether these employees can lawfully be required to submit to random or reasonable suspicion drug testing will depend upon several factual issues. These issues may include the nature and extent of the employees' duties, the procedural safeguards in place in a particular testing program, and the extent to which employees are now required to submit to privacy deprivations (such as medical examinations, physical fitness tests, etc.). We cannot, from the information supplied us, determine as a conclusive matter whether the requisite facts exist which would render either "reason to suspect" or random drug testing "legal" in these instances. We will however, set out the relevant and current law on the topic in an attempt to provide some general guidelines in the area.
It is my opinion that, as a general matter, "reason to suspect" drug testing of these employees would most likely be found "legal" by a court addressing the issue. A court might also find, given certain facts, that even random drug testing of such employees would be found "legal". We are aware of no Arkansas statutes or regulations pertaining to drug testing. The relevant law involves constitutional analysis under recent decisions of the United States Supreme Court.
The Court recently decided two cases involving drug testing of public employees. See Skinner v. Railway Labor Executives' Association, 489 U.S. ___, 103 L.Ed.2d 685 (1989), and Treasury Employees v. Von Raab, 489 U.S. ___, 103 L.Ed.2d employees who were involved in certain train accidents, or employees about whom a supervisor had a "reasonable suspicion" of drug use. Von Raab involved the drug testing of custom service employees who sought transfer or promotion to certain positions with the Customs Service. The Court in both cases held that the testing was subject to the strictures of the Fourth Amendment to the United States Constitution, that the testing was a "search" under that amendment, but that the testing involved special needs of the government beyond ordinary law enforcement, and that upon weighing the governmental interest involved against the privacy expectations of the employees, the tests administered were found to be reasonable.
Since the U.S. Supreme Court's decisions noted above, the District of Columbia Circuit Court of Appeals handed down its decision in National Federation of Federal Employees v Cheney, 884 F.2d 603
(D.C. Cir. 1989) cert denied ___ U.S. ___, 110 S.Ct. 864
(1990). In Cheney, a labor union brought an action challenging the drug testing program implemented on civilian employees of the federal military. Cheney involved, at least in part, the implementation of a purely random drug test. The court, relying upon Skinner and Von Raab, upheld the testing, at least with respect to some employees. The United States Supreme Court denied certiorari. The portion of the Cheney decision of particular importance to your question is the segment concerning the drug-testing of army civilian police and guards. Because it is my opinion that this segment of the decision is especially apposite, we will quote extensively therefrom:
 Appellants maintain that compelling safety and security interests justifying [sic] testing the approximately 3,700 civilians employed in positions pertaining to law enforcement, most notably civilian police and guards. . . . The threat to public safety posed by drug-impaired, gun-toting civilian officers is manifest; the most apparent risk arising from the fact that these personnel are armed, `many with automatic weapons,'. . . and may have access to other munitions. . . .
Appellees contend that the risk to public safety posed by a drug-impaired Army guard is more theoretical than real, as `the work of an Army guard is far less dangerous and far more mundane than that of their counterparts on the outside, who may have to use their firearms at any moment'. . . . Our reading of Von Raab convinces us that this contention, while substantial, must fall. In Von Raab, the Supreme Court determined that the public interest `to prevent the promotion of drug users to positions that require the incumbent to carry a firearm' warranted pre-ascension testing of such personnel. 109 S.Ct. at 1393. While it might be argued that we are not in fact presented with "`duties fraught with . . . risks of injury,'" id., the Court's opinion is silent on the likelihood that the threatened harm would occur. Nor is it obvious to us that Customs agents who are uninvolved with drug interdiction more frequently discharge their weapons than do the Army guards in question. It certainly appears that here, as in Von Raab, `the public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force.' Id. The very fact that these employees' duties entail the possession of deadly weapons belies appellants' argument that there is no real danger of their using them.
884 F.2d at 612.
The court went on to note that a second and perhaps more grievous threat is posed by a drug-impaired guard. The court noted that some of the installations where the security personnel are stationed test the newest and most technologically advanced weapons systems, including nuclear weapons. The court noted that in such instances "the careless discharge of a weapon or failure to prevent or detect fire, theft, or accidental or willful destruction to property carries the attendant risk of catastrophic consequences." 884 F.2d at 612.
It is thus my opinion that if similar facts are present regarding the security personnel sought to be tested by the Military Department of Arkansas, a court would likely uphold even random testing of security guards who are authorized to carry firearms.
We are not so fortunate as to have the benefit of post-Skinner and Von Raab decisions relating specifically to firefighters who perform the duties you describe. The same considerations outlined in the Supreme Court's decisions will, however, apply. The extent to which these employees can be subjected to drug testing will depend upon the factual consideration outlined earlier. A court would balance the governmental interest in public safety against the firefighter's expectation of privacy, The firefighter's duties must be examined, along with the extent to which his or her privacy expectations have already been diminished. When weighing these two interests, the reasonableness of the testing is the issue. Necessarily, then, the procedural safeguards involved in a particular testing program must be considered.
Decisions prior to Skinner and Von Raab appear to be split on whether random testing of firefighters is permissible. See e.g., Lovorn v. City of Chattanooga, Tenn., 846 F.2d 1539 (6th Cir. 1988), and Everett v. Napper, 833 F.2d 1507 (11th Cir. 1987). The differences in these opinions, however, may be attributed to the differing facts in each case. It should be noted, however, that it has been stated that:
 Fighting fires is perhaps the most dangerous and hazardous of all professions. It is imperative that those who are charged with the public responsibility of extinguishing fires, sometimes risking their own lives for the sake of someone trapped, be free of the debilitating influences of controlled substances. It is well established that the use of such substances, such as marijuana, can adversely affect one's perception, decision-making time, short-term memory, motor skills, and judgment. Fire fighters so affected become a risk to themselves, their fellow fire fighters, and those depending on them for rescue. We have no hesitation, therefore, in recognizing the compelling nature of the City's interest in keeping its fire fighters free from the effects of illegal drugs.
846 F.2d at 1544.
Given the requisite facts and procedural safeguards, it is my opinion that under current law, it is possible that even random drug testing of the employees you have mentioned could be upheld by the courts. This conclusion is buttressed by the recent decisions of the U.S. Supreme Court in Skinner and Von Raab, and by its denial of certiorari in Cheney, all of which evidence the Supreme Court's current disposition on the topic.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] The issue with respect to some other employees in the Treasury Employees case was remanded for more factual development.